UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

FILED
CHARLOTTE, N.C.
01 JAN 25 PM 12:07
U.S. DISTRICT COURT
W. DIST. OF N.C.

| | |
|---|---|
| UNITED STATES EX REL. KAREN T. WILSON ) <br> ) <br> Plaintiffs, ) <br> ) <br> V. ) <br> ) <br> GRAHAM COUNTY SOIL & WATER ) <br> CONSERVATION DISTRICT, GRAHAM COUNTY ) <br> BOARD OF COUNTY COMMISSIONERS, ) <br> CHEROKEE COUNTY SOIL & WATER ) <br> CONSERVATION DISTRICT, CHEROKEE ) <br> COUNTY BOARD OF COUNTY COMMISSIONERS, ) <br> RICHARD GREENE, CHERIE GREENE, WILLIAM ) <br> TIMPSON, RICKY STILES, KEITH ORR, ) <br> BETTY JEAN ORR, RAYMOND WILLIAMS, ) <br> DALE WIGGINS, JOYCE LANE, ) <br> GERALD PHILLIPS, ALLEN DEHART, ) <br> JIMMY ORR, LLOYD MILLSAPS, ) <br> JERRY WILLIAMS, BILLY BROWN, ) <br> LYNN CODY, EUGENE MORROW, CHARLES ) <br> LANE, CHARLES LANEY, GEORGE POSTELL, ) <br> BILL TIPTON, LLOYD KISSELBURG, C.B. ) <br> NEWTON, EDDIE WOOD, TED ORR, BERNICE ) <br> ORR, JOHN DOE AND JOHN DOE ) <br> CORPORATIONS AND GOVERNMENTAL ) <br> ENTITIES 1-99, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO.: 2:01CV19 7 <br><br> Jury Trial Requested <br><br> TO BE FILED <br> *IN CAMERA* <br> AND UNDER SEAL |

## COMPLAINT

1.      This is an action by *qui tam* Relator **Karen T. Wilson**, in the name of the United

States Government, to recover penalties and damages arising from false claims for money

submitted to the United States Government, and in her own name to obtain the relief needed to

make her whole from the damages she suffered from violations of 31 U.S.C. § 3730(h). She is an

Page 1 of 19

Case 2:01-cv-00019-MR   Document 1   Filed 01/25/01   Page 1 of 19

"original source" of the information on which the allegations contained hereto are based, as that term is defined in 31 U.S.C. §3730(e)(4).

## Jurisdiction And Venue

2. This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.SC. § 1331 in that this action arises under the laws of the United States.

3. Venue is proper in the United States District Court for the Western District of North Carolina pursuant to 28 U.S. C. §§ 1391(b), and 1391(c), and under 31 U.S.C. 3732(a) because at least one or more of the defendants can be found, resides and/or transacts business within the district, and the acts proscribed by the False Claims Act occurred within the district.

## The Parties

4. Plaintiff-Relator **Karen T. Wilson** is a citizen and resident of the United States and North Carolina and resides in the Western District of North Carolina. She formerly was employed by Defendant Graham County Soil and Water Conservation District.

5. Defendant **Graham County Soil & Water Conservation District** is a local special-purpose governmental entity located in and servicing Graham County, North Carolina (hereinafter referred to as "Graham County SWCD").

6. Defendant **Graham County Board of County Commissioners** is the political entity that governs Graham County, North Carolina (hereinafter referred to as "Graham County Commission").

7. Defendant **Cherokee County Soil & Water Conservation District** is a local special-purpose governmental entity located in and servicing Cherokee County, North Carolina (hereinafter referred to as "Cherokee County SWCD").

8.      Defendant **Cherokee County Board of County Commissioners** is the political entity that governs Cherokee County, North Carolina (hereinafter referred to as "Cherokee County Commission").

9.      Defendant **Richard Greene** is a citizen and resident of the United States and was an employee of the Natural Resources Conservation Service ("NRCS").

10.     Defendant **Cherie Greene** is a citizen and resident of the United States and is the wife of defendant Richard Greene.

11.     Defendant **William Timpson** is a citizen and resident of the United States and was an employee of the NRCS.

12.     Defendant **Ricky Stiles** is a citizen and resident of the United States.

13.     Defendant **Keith Orr** is a citizen and resident of the United States and was an employee of the Graham County SWCD.

14.     Defendant **Betty Jean Orr** is a citizen and resident of the United States and is the wife of defendant Keith Orr.

15.     Defendant **Gerald Phillips** is a citizen and resident of the United States and was a Supervisor of the Graham County SWCD at all relevant times.

16.     Defendant **Allen Dehart** is a citizen and resident of the United States and was a Supervisor of the Graham County SWCD at all relevant times.

17.     Defendant **Jimmy Orr** is a citizen and resident of the United States and was a Supervisor of the Graham County SWCD at all relevant times.

18.     Defendant **Lloyd Milisaps** is a citizen and resident of the United States and was a Supervisor of the Graham County SWCD at all relevant times.

19.     Defendant **Joyce Lane** is a citizen and resident of the United States.

20.     Defendant **Jerry Williams** is a citizen and resident of the United States.

21. Defendant **Billy Brown** is a citizen and resident of the United States. Upon information and belief, at all relevant times he was doing business as Brown Construction Company.

22. Defendant **Dale Wiggins** is a citizen and resident of the United States and was a Supervisor of the Graham County Commission at all relevant times.

23. Defendant **Raymond Williams** is a citizen and resident of the United States and was a Supervisor of the Graham County Commission at all relevant times.

24. Defendant **Lynn Cody** is a citizen and resident of the United States and was a Supervisor of the Graham County Commission at all relevant times.

25. Defendant **Eugene Morrow** is a citizen and resident of the United States and was a Supervisor of the Cherokee County Commission at all relevant times.

26. Defendant **Charles Lane** is a citizen and resident of the United States and a partner in G&L Farms in Graham County.

27. Defendant **Charles Laney** is a citizen and resident of the United States and was a Supervisor of the Cherokee County Commission at all relevant times.

28. Defendant **George Postell** is a citizen and resident of the United States and was a Supervisor of the Cherokee County Commission at all relevant times.

29. Defendant **Bill Tipton** is a citizen and resident of the United States and was a Supervisor of the Cherokee County SWCD at all relevant times.

30. Defendant **Lloyd Kisselburg** is a citizen and resident of the United States and was a Supervisor of the Cherokee County SWCD at all relevant times.

31. Defendant **C.B. Newton** is a citizen and resident of the United States and was a Supervisor of the Cherokee County SWCD at all relevant times.

32. Defendant **Eddie Wood** is a citizen and resident of the United States and was a Supervisor of the Cherokee County SWCD at all relevant times.

33. Defendant **Ted Orr** is a citizen and resident of the United states and is the husband of Bernice Orr.

34. Defendant **Bernice Orr** is a citizen and resident of the United states and is the wife of Ted Orr.

35. Each defendant who is alleged herein to be or to have been either a Supervisor of the Graham County Commission or of the Graham County SWCD is being sued in his personal capacity for his actions taken as a member of the respective entity and/or for the actions of that entity that are alleged herein, as well as for any other actions taken by the defendant that are alleged herein. Upon information and belief, each such defendant participated in all of the actions that the respective entity is alleged herein to have taken.

36. Each defendant who is alleged herein to be or to have been either a Supervisor of the Cherokee County Commission or of the Cherokee County SWCD is being sued in his personal capacity for his actions taken as a member of the respective entity and/or for the actions of the respective entity of which he is a member that are alleged herein. Upon information and belief, each such defendant participated in all of the actions that the respective entity is alleged herein to have taken.

37. Plaintiff-Relator Wilson is also pursuing claims for relief against Defendants listed as John Does and John Doe Corporations and Governmental Entities 1-100 because, while they have been participating and/or conspiring with the specific Defendants named in this Complaint in presenting or causing to be presented false or fraudulent claims to the United States, their names or the complete facts concerning their complicity presently are not known to Relator Wilson.

## Factual Allegations

38. Defendants have violated the False Claims Act by perpetrating and participating in, and conspiring to participate in, various schemes to defraud the United States Government under financial aid programs for farmers and other landowners located in certain counties in western North Carolina, principally in the counties of Graham, Cherokee and Clay.

### A. False Claims Under The Federal Emergency Watershed Protection Program

39. On January 18, 1993, Relator Wilson was hired as a part-time secretary at the Graham County SWCD.

40. Pursuant to the Emergency Watershed Protection Program, a disaster relief program funded by the United States Government, a grant program known as EWP-216 was instituted for Graham, Cherokee and Clay Counties in North Carolina for assistance for damages to streams and creeks caused by a storm in February 1995.

41. Defendant Keith Orr was appointed an inspector of the EWP-216 program by the Graham County SWCD.

42. Defendants presented false claims and/or made or caused to be made false records or statements to get false claims paid and/or conspired to defraud the United States Government by getting false or fraudulent claims paid under the EWP-216 program, thereby defrauding the United States Government of hundreds of thousands of dollars.

43. Defendants' actions in this regard include the following:

    a. In a June 20, 1995 Graham County SWCD board meeting, Keith Orr presented the district a request for payment of $5,130 for EWP-216 work knowing that the claim was improper because he was ineligible to receive funds under the program because of his conflict of interest as inspector and because there had been no bidding on the contract as required by the EWP-216 program.

b.  The Graham County SWCD board approved the payment and had it paid, despite knowing that the claim was improper for the aforementioned reasons, and requested from the Graham County Commission the corresponding EWP-216 funds.

c.  Subsequent to this claim, in 1995 and 1996 Keith Orr made several other improper requests for payment under the EWP-216 program utilizing the same procedures, which payments were approved by the Graham County SWCD board and Graham County Commission, despite their knowledge of their impropriety. These included the following: on August 31, 1995 a check for $6,725.00 was issued to Keith Orr; and on October 4, 1995 a check for $2,700.00 was issued to Keith Orr for an EWP-216 contract which did not exist.

d.  Gerald Phillips, a supervisor at the Graham County SWCD, conspired with Orr and others to get Orr's false claims paid and instructed Relator Wilson that she should pay Keith Orr's claims whether or not Orr had done the work or not.

e.  In addition to the above noted improprieties with Orr's claims, the claims were improper because Keith Orr had not performed some or any of the work for which he filed claims for payment and for which he was paid.

f.  Keith Orr conspired with Richard Greene and William Timpson to file the aforementioned false claims and to share the payments from the claims among the three of them.

g.  They also secretly and improperly sold logs and timber that they removed from landowners' property as part of the EWP-216 Program, and split the illegal proceeds.

h.  Richard Greene also conspired with Ricky Stiles, a landowner, to file false claims under the EWP-216 program and/or Cost Share Program (defined below) and they did file such claims and thereby improperly received funds from the program.

i.  Upon information and belief, Richard Greene and William Timpson approved all of the payments made by NRCS, a branch of the United States Government, pursuant to the EWP-216 program, that ultimately went to Keith Orr, despite knowing that the claims of Orr were false.

j.  Keith Orr, Richard Greene, William Timpson, Billy Brown and Brown Construction Company conspired to make similar false claims under the EWP-216 program for Clay and Cherokee Counties and split the proceeds from the false claims.

k.  They did make such false claims and receive payment for them.

l.  The Cherokee County SWCD and the Cherokee County Commission knowingly made false claims to the NRCC based on the aforementioned claims.

m.  Cherokee County SWCD and the Cherokee County Commission committed additional violations of the False Claims Act by making false claims to the NRCC under the EWP-216 program by submitting claims for payments to unauthorized claimants, for payments based on claims for which there was no bidding although bidding was required under the program, and by otherwise paying for claims with the knowledge that the payments were improper.

**B.  False Claims Under The North Carolina Agricultural Cost Share Program**

44.  The North Carolina Agricultural Cost Share Program ("Cost Share Program") is a state program to help farmers improve water quality.

45.  The Cost Share Program was administered by the local soil and water conservation district boards, including the Graham County SWCD Board.

46.  Upon information and belief, the Cost Share Program was funded, at least in part, by federal funds.

47. Defendants presented false claims and/or made or caused to be made false records or statements to get false claims paid and/or conspired to defraud the United States Government by getting false or fraudulent claims paid under Cost Share Program.

48. Defendants' actions in this regard include the following:

   a. Beginning before 1993, and through 1996, Richard Greene, William Timpson and Keith Orr and others conspired to make, and did make, false claims under the Agricultural Cost Share Program, defrauding the United States Government of hundreds of thousands of dollars.

   b. These conspiracies included illegal sales of filter fabric to landowners at inflated prices in Cherokee County, Swain County and other counties in North Carolina.

   c. Upon information and belief, these illegal sales were done in conspiracy with the SWCD boards and/or county commissions for the respective counties.

   d. The conspirators also approved unqualified plans so that they could sell the pipe and filter fabric to farmers at inflated prices, and approved fraudulent plans with forged signatures of landowners and pocketed all of the payment when no work was performed.

   e. The conspirators also filed forged "amendments" to plans adding work, and related expenses, that was never performed.

   f. Defendants Richard Greene, Cherie Greene, Charles Lane and Joyce Lane made and/or approved false claims and/or conspired to have the false claims paid under the Cost Share Program in the name of G&L Farms (or a similar such name) and for property that they did not own.

   g. On or around February 20, 1996, the Graham County SWCD Board was made aware that Defendant Keith Orr had not submitted any Cost Share Program plans for the year, which are required by the program, yet no action was taken against Defendant Keith Orr.

h.  Ted Orr and Bernice Orr, along with Richard Greene, Keith Orr and William Timpson, made false claims and conspired to have the false claims paid under the Cost Share Program such that Ted and Bernice Orr requested and received $15,000 in funds for their farm in excess of the program's $15,000 per farm, per year limit — in effect receiving double the maximum amount to which they might have been entitled.

C.  **False Claims Under Farm Services Agency Programs**

49.  The Farm Services Agency (FSA) programs included programs for cropland and farmland improvement.

50.  Upon information and belief, the FSA programs were funded, at least in part, with federal funds.

51.  The federal technicians for the FSA programs for Graham County, and upon information and belief, the surrounding counties in North Carolina, were Richard Greene and William Timpson.

52.  Defendants presented false claims and/or made or caused to be made false records or statements to get false claims paid and/or conspired to defraud the United States Government by getting false or fraudulent claims paid under FSA programs.

53.  Defendants' actions in this regard include the following:

a.  Richard Greene applied for and obtained funds from these programs by improperly approving his own application for funds, which project also did not meet the requirements of the programs for other reasons.

b.  In 1995, Jerry Williams, a friend of Keith Orr, applied for and obtained FSA program funds for his trout farm for which he failed to meet essential program requirements.

c.  Upon information and belief, Defendants filed additional false claims under this program.

**D.   Other False Claims Act Violations**

54. In addition to the actions noted above, Defendants committed other acts in violation of the False Claims Act with respect to the above-described programs and/or other programs funded, in whole or in part, by federal funds.

55. These acts included the following:

   a.   The Defendants failed to set up the required personnel policies and procedures.

   b.   Defendants falsified wage and salary reports.

   c.   Defendants approved various budgets for projects funded, in whole or in part, by federal funds, in violation of applicable guidelines and requirements..

   d.   Defendants approved and disbursed funds to pay "ghost" bids.

   e.   Defendants approved and disbursed the funds for the improper double billing of claims and projects.

   f.   Defendants approved and disbursed funds in the absence of a contract, despite the program requirement that there be an existing contract..

   g.   Defendants approved and disbursed funds to Defendant Keith Orr under Ghost names.

**E.   Relator Wilson's Investigation And Reporting To Authorities And Defendants' Employment-Related Retaliation Against Her.**

56. Subsequent to her reporting of the false claims, Relator Wilson experienced extreme harassment at her job by and/or with the knowledge and consent of her employer. Some instances of the harassment and retaliation are set forth below.

57. On November 16, 1995, when Defendants Richard Greene and Keith Orr became aware that Relator Wilson might report them, they went to the Graham County Finance Office and tried to get Sharon Crisp, a finance officer, to destroy certain EWP-216 documentation.

58. When that did not work, Defendants Richard Greene and Keith Orr then tried to get Relator Wilson to bill Graham County improperly and fraudulently for another 1,000 feet of seeding in order to cover up discrepancies in the EWP-216 program payments caused by earlier false claims.

59. Because of Relator Wilson's unwillingness to participate in Defendants' fraudulent activities and because she had reported those activities to the NRCS in December of 1995, she was continually harassed by Defendants, including Graham County SWCD Board members, and Richard Greene, Keith Orr and their families with the Board's knowledge, acquiescence and/or approval.

60. As part of its harassment of Relator Wilson, the Graham County SWCD Board repeatedly criticized Wilson's work without cause.

61. On December 5, 1995, a cassette tape of a recorded conversation was left at Relator Wilson's door. On the tape were voices that Relator Wilson identified as those of Richard Greene, Keith Orr and his father, Jimmy Orr, who is currently a Graham County SWCD supervisor.

62. The tape recorded a conversation in which Richard Greene and Keith Orr discussed plans to "get rid" of Relator Wilson by making false allegations against her.

63. On or around December 7, 1995, Keith Orr made threats against Relator Wilson to dissuade her from disclosing the contents of the tape to anyone.

64. On or around December 11, 1995, Relator Wilson sent a letter to Mr. Richard A. Gallo of NCRS detailing accusations of fraud and false claims against the SWCD Board and others.

65. Based on Wilson's letter, the Office of Inspector General ("OIG") of the USDA contacted Relator Wilson in late December 1995.

66. On or around December 21, 1995, OIG Agent Beth Marik interviewed Relator Wilson at her home for three hours regarding Wilson's allegations of wrongdoing, including those concerning the false claims submitted under the EWP-216 and Cost Share Programs. Wilson gave the tape and other evidence she had to Marik.

67. On or around December 19, 1995, Defendant Jimmy Orr called Relator Wilson and threatened her regarding the tape.

68. On or around January 2, 1996, in an act of harassment Kim Crisp, a Graham County SWCD finance officer, telephoned Relator Wilson and reprimanded her for errors in a EWP-216 claim submitted by Keith Orr despite the fact that the Graham County SWCD Board had instructed Relator Wilson to process Mr. Orr's prior requests for payment even though they contained similar such errors.

69. In early January 1996, OIG Agent Ken Golec came to Relator Wilson's office and she showed him additional documentation of the various false claims and related improprieties. Agent Golec interviewed her and investigated her allegations.

70. Beginning in January 1996, agents of the State Bureau of Investigation ("SBI") also interviewed Relator Wilson several times concerning her allegations.

71. The investigations by OIG and SBI of Relator Wilson's allegations continued through 1998, and throughout their investigations their agents regularly contacted Relator Wilson, who assisted them in their investigations.

72. On or around January 11, 1996, Relator Wilson discovered a gun barrel on a desk in her office, which, upon information and belief, had been left by one of her co-workers in an attempt to intimidate and scare her.

73. On or around January 11, 1996, Relator Wilson showed Levourn Wiggins NRCS files which documented that Ted Orr and his wife, Bernice Orr, had obtained improperly Cost Share Program funds.

74. On or around January 16, 1996, Relator Wilson questioned the Graham County SWCD Board about a payment to Keith Orr that was improper because it was for a project that was required to be bid, but was not subjected to the bidding process.

75. On or around March 11, 1996, while Relator Wilson was in the local public library, she overheard Betty Jean Orr, Keith Orr's wife, who was employed by the library, say that she was going to use a six-shooter to shoot Wilson's husband Dennis and that she was going to scratch Relator Wilson's eyes out. Orr stated that it was "all Karen Wilson" and that no one had done anything wrong. Relator Wilson reported the comments to Orr's boss Marsh Clonts and to the USDA OIG.

76. In April 1996, Raymond Williams, Chairman of the Graham County Commission, attended an executive session of the Graham County SWCD Board, which Relator Wilson also attended. At that session, Williams threatened to eliminate Wilson's job by closing the SWCD office if she did not stop the federal investigation.

77. The entire Graham County SWCD Board heard Williams' threat but made no response.

78. Subsequent to Richard Greene and William Timpson being relieved of their duties in December of 1995 regarding Graham County, Keith Orr, his wife Betty Jean Orr and Cherie Greene occasionally drove by the business of Relator Wilson's parents while Relator

Wilson was there and when they saw her they would stick up their middle fingers out the window, directing their obscene and hostile gesture to Relator Wilson.

79. From April 8 through April 12, 1996, Donna Moffitt and Diane Brooks from the North Carolina Department of Environment, Health and Natural Resources (DEHNR) conducted a compliance review. As a result of their review, the funds from DEHNR were stopped. Defendant Raymond Williams, a Graham County Commissioner, told Relator Wilson to continue paying Keith Orr even after the wrongdoing was discovered and the funds were suspended

80. Defendants continued to make various threats against Relator Wilson through May of 1996, which included telephone calls from Keith Orr's family to Wilson's home and office.

81. As a result of the severe stress from the threats and harassment, on June 26, 1996, Relator Wilson experienced symptoms of a heart attack and was forced to seek immediate medical help.

82. Because of her chest pains, Wilson's physician gave her an EKG exam and kept her under observation for several hours.

83. Wilson's physician also prescribed her anti-depressants and ordered her to take a three-month medical leave of absence from her position at the Graham County SWCD.

84. Complying with her physician's directive, Relator Wilson went on medical leave.

85.. While on medical leave, Relator Wilson continued to take her medication and was essentially bed-ridden for over a month.

86. Relator Wilson was able to return to work on or about October 1996.

87. However, Defendants resumed their harassment of Relator Wilson once she returned to work. Her co-workers ostracized her and refused even to acknowledge her presence.

Page 15 of 19

Case 2:01-cv-00019-MR   Document 1   Filed 01/25/01   Page 15 of 19

88.     Unable to tolerate harassment any longer, Relator Wilson was forced to resign on March 3, 1997, effective March 7, 1997.

### Count I -- False Claims Act Violations

89.     Relator Wilson hereby incorporates and re-alleges herein Paragraphs 1-88 as if fully set forth herein.

90.     By engaging in the acts set forth above, Defendants, individually, and by and through their agents, officers and employees, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733, (i) knowingly presented or caused to be presented to an officer or employee of the United States Government numerous false or fraudulent claims for payment or approval, (ii) knowingly made, used or caused to be made or used, false records or statements to get a false or fraudulent claim paid or approved by the Government; (iii) conspired to defraud the Government by getting a false or fraudulent claim allowed or paid; and/or committed other violations listed of the False Claims Act set forth in § 3729(a)(4)-(7).

91.     The United States has been damaged as a result of Defendants', violations of the False Claims Act in amounts to be proven at trial.

92.     The United States is entitled to treble damages based upon the amount of damage sustained by the United States as a result of Defendants' violations of 31 U.S.C. § 3729.

93.     The United States is entitled to a civil penalty of between $5,000.00 and $10,000.00 as required by 31 U.S.C. § 3729(a) for each violation of the False Claims Act by the Defendants

94.     Relator is also entitled to reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## Count II -- False Claims Act Retaliation Violation

95. Relator Wilson hereby incorporates and realleges herein Paragraph 1-88 as if fully set forth herein.

96. The defendant supervisors of defendant Graham County SWCD were alter-egos and totally dominated and controlled the Graham County SWCD and/or used Graham County SWCD for their improper personal use and were therefore "de facto" employers of Relator Wilson.

97. Relator Wilson was discriminated against, harassed by, and constructively discharged from her employment by her employer, defendant Graham County SWCD and, by and thorough its officers, agents and employees, and/or by her de facto employers, the defendant supervisors of Graham County SWCD, because of lawful acts done by her in furtherance of an action and/or possible action under the False Claims Act and/or investigation of False Claim Act violations that could serve as a basis of an action under the False Claim Act, including her reporting of False Claims Acts violations to law enforcement officials and her participation in the investigation of those violations by law enforcement officials and her investigation of the actions of one or more of the defendants that are actionable under the False Claims Act.

98. The actions of defendant Graham County SWCD and/or its defendant Supervisors set forth above violated 31 U.S.C. § 3730 (h) and damaged Relator.

99. As alleged above, other defendants harassed Related Wilson in violation of 31 U.S.C. § 3730 (h) and/or assisted and/or conspired with defendant Graham County SWCD, its Supervisors and/or agents to harass Relator Wilson in violation of 31 U.S.C. § 3730 (h) and are each subject to liability under that provision.

100. Therefore, Relator Wilson is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

**Wherefore,** with respect to Count I, the Relator, on behalf of himself and the United States, requests that this Court grant the following relief:

(a) That judgment against each named Defendant in an amount equal to three times the amount of damages the United States has sustained because of his or its actions, plus a civil penalty of $5,000 to $10,000 for each violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs of the United States for its expenses related to this action;

(b) That the Relator be awarded all costs incurred, including reasonable attorneys' fees;

(c) That in the event that the United States intervenes in this action, the Relator be awarded 25%, but in no event less than 15%, of the proceeds of the resulting judgment in or settlement of this action;

(d) That in the event that the United States does not intervene in this action, the Relator be awarded 30%, but in no event less than 25%, of the proceeds of the resulting judgment in or settlement of this action;

(e) That the Relator be awarded prejudgment interest; and

(f) That the United States and the Relator receive all relief both at law and at equity, as this Court determines is appropriate.

**Wherefore,** with respect to Count II, Relator requests that the Court grant the following relief:

(a) That Relator be awarded all the relief to which she is entitled pursuant to 31 U.S.C. § 3730 (h), including personal injury damages for emotional and mental distress, two times her back pay, interest on the back pay, front pay or reinstatement, attorneys fees and litigation costs; and

(b) Such other relief as the Court finds appropriate.

**A TRIAL BY JURY IS DEMANDED.**

This 25th day of January, 2001.

                                        Respectfully submitted,

                                        KAREN T. WILSON

                                        BY: _/s/ Todd Capitano_

                                        Todd Capitano
                                        Bishop, Capitano & Abner, PA
                                        4521 Sharon Road, Suite 350
                                        Charlotte, NC 28211
                                        (704) 716-1200
                                        (704) 716-1201 (fax)

OF COUNSEL:
Mark T. Hurt
159 West Main Street
Abingdon, VA 24210
(540) 623-0808
(540) 623-0212

Brian S McCoy
339 East Main Street, Suite 101
Rock Hill, SC 29730
(803) 366-2280
(803) 366-0643 (fax)